THE STATE ex rel. CENTRAL COAL & COKE COM-PANY v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals, and JOSEPH HOLVEY, Sheriff.

In Banc, May 22, 1917.

1. **MINING: Duty as to Safety.** It is the duty of the miner to keep his working place safe; it is the duty of the master to keep the entries (the places generally used by numerous miners) in a condition of reasonable safety.

2. **INSTRUCTIONS: Broader Than Pleading or Evidence.** An instruction cannot be broader than the pleadings, nor broader than the facts proven; it must be within the purview both of the pleadings and the evidence.

3. ————: ————: **Mining: Place of Danger.** Where the miner was working at removing roof supports that had been left when the rooms of the mine were "turned," and his petition is drawn on the theory that at a point in the mile-long entry fifteen to twenty-five feet from his working place his master had permitted a bad roof to remain, and he had gone to that point to eat his dinner, not knowing it was unsafe, and was killed by the falling of the fragile roof, an instruction which permits a recovery if a large slab of rock fell from the roof of "one of the main entries," without limiting the point of injury to the place in the entry at which the petition charges the negligence was, is broader than the pleadings, and a verdict cannot be upheld on the theory that the error was harmless.

4. ———: ———: Harmless Error. If evidence assuming a broader field than the pleadings is erroneously admitted, instructions based upon such evidence which are broader than the pleadings cannot be held to be harmless. That course would require defendant to meet an issue of which the petition did not give him notice.

5. ———: ———: ———: Certiorari: Quashing Opinion of Court of Appeals. The Court of Appeals cannot preclude a review by the Supreme Court of an instruction that is broader than the pleadings by merely saying it is harmless.

6. ———: Conflicting. An instruction for plaintiff authorizing a recovery if a loose slab of rock fell from the roof of "one of the main entries of defendant's mine" and crushed the miner, is in direct conflict with a correct instruction given for defendant telling the jury, in the language of the petition, that they must find the roof fell at a point fifteen to twenty feet from his working place; and by repeated decisions it has become the established rule of law in this State that if two instructions conflict and the one given for appellant is right under the law, the giving of the one for plaintiff is error, for which a judgment for him must be reversed.

7. ———: Damages: Aggravation. An instruction telling the jury that, if they find for plaintiff in the action for the negligent killing of her husband, they will allow her a sum not to exceed $10,000, in their discretion, etc., and "you may also take into consideration the facts constituting negligence on the part of the defendant causing the death," was erroneous, first, because there were no aggravating circumstances shown and the instruction was therefore broader than the evidence; and, second, the petition did not plead such a case, and the instruction therefore broadened the issues.

### Certiorari.

Record quashed.

*B. R. Dysart* and *W. C. Goodson* for relator.

(1) It is now well settled that the Supreme Court has the power as well as the duty to quash the decision of one of the appellate courts of the State, where its rulings are not in accord with, but against the rulings of the Supreme Court. State ex rel. v. Ellison, 266 Mo. 604; State ex rel. v. Reynolds, 265 Mo. 88. (2) If the Court of Appeals approves the admission or exclusion of evidence, contrary to prior rulings of the Supreme Court; and if the Court of Appeals approves an in-

struction, which instruction was not in accord with the last or prior instruction of the Supreme Court, then the Supreme Court on *certiorari* will quash the record of the Court of Appeals. State ex rel. v. Ellison, 256 Mo. 644. (3) It is submitted by the relator that the Kansas City Court of Appeals failed to follow the last ruling decision of the Supreme Court in the following particulars: (a) The Court of Appeals approved an instruction authorizing a recovery if plaintiff's husband was killed anywhere in the relator's coal mine, provided he was so killed away from his working place; and this in the face of the fact that her petition alleged that he was killed fifteen or twenty-five feet north of his working place, and that he was killed by reason of the fact that the relator had negligently failed and neglected to care for and keep in repair the roof of the entry at a point fifteen or twenty-five feet north of his working place. This instruction was evidently a broadening of the issues, and if so, it contravenes prior rulings of the Supreme Court. Degonia v. Railroad, 224 Mo. 589; Mansur v. Bott, 80 Mo. 658; Bank v. Murdock, 62 Mo. 70; State ex rel. v. Ellison, 176 S. W. 11; State ex rel. v. Ellison, 181 S. W. 998; State ex rel. v. Ellison, 187 S. W. 23. (b) There was palpable and radical error in Instruction 2 given by the trial court on the measure of damages, which was contrary to the former rulings of the Supreme Court. Said instruction authorized the jury to take into consideration the character of the defendant's negligence. The verdict and judgment of the court was for $6000. Said instruction sounded in punitive damages. It was equivalent to saying: "You should take into consideration the aggravating circumstances of the defendant's negligence." Boyd v. Railroad, 236 Mo. 54; Goode v. Coal Co., 167 Mo. App. 176. (c) Instruction 7 was evidently correct, and in palpable conflict with the plaintiff's instruction 1, and therefore in conflict with the last and prior rulings of the Supreme Court. Sheperd v. Transit Co., 189 Mo. 373; Porter v. Railroad, 199 Mo. 96; Imp. Co. v. Ritchie, 143 Mo. 612.

*Dan R. Hughes* and *Burns, Burns & Burns* for respondents.

(1) Plaintiff's instructions declare the law.  Boyd v. Railroad, 236 Mo. 94; Boyd v. Railroad, 249 Mo. 136; Goode v. Coal & Coke Co., 179 Mo. App. 207; Goode v. Coal & Coke Co., 167 Mo. App. 169.  (2) The opinion of the Kansas City Court of Appeals is not in conflict with decisions of the Supreme Court.  Holman v. Macon, 177 S. W. 1078; Mansur v. Botts, 80 Mo. 658; State ex rel. v. Reynolds, 265 Mo. 88; Dagonia v. Railroad, 224 Mo. 564; National Newspaper Assn. v. Ellison, 176 S. W. 11; State ex rel. v. Robertson, 262 Mo. 535.  (3) Plaintiff's instruction on the measure of damages correctly declares the law.  Boyd v. Railroad, 236 Mo. 54-94; Boyd v. Railroad, 249 Mo. 110-136; Secs. 5426, 5427, R. S. 1909.  (4) Where the judgment is for the right party it will not be reversed, although error was committed.  Sec. 2082, R. S. 1909; Putnam v. Bowyer, 173 Mo. App. 394; Redd v. Railroad, 161 Mo. App. 522.

GRAVES, C. J.—*Certiorari* to the Kansas City Court of Appeals, directing that said court certify up its record in the case of Catherine Goode, Respondent, v. Central Coal & Coke Company, Appellant.  The case has experienced a rather checkered career.  The judgment now certified to us by the Court of Appeals is the third judgment entered therein by that court.  When the case was first there (167 Mo. App. 169) a judgment for plaintiff was reversed for errors in instructions. So, too, when there the second time (179 Mo. App. 207) it was likewise reversed for errors in instructions.  By the present (third) judgment the plaintiff is sustained in a recovery of $6000 for the alleged negligent killing of her husband whilst working as a coal miner for defendant in one of its mines in Macon County.  The record is somewhat broadened because the opinion before us refers specifically to the two previous opinions for the facts.  We have, therefore (by this reference in the last opinion) not only the three opinions of the Court of Appeals, but likewise such records and evidence as are

incorporated therein, either by reference or by direct quotation. Under these circumstances it would be indeed singular if the complete record in the Court of Appeals was not before us through their several opinions. From them all we gather the facts thus: Plaintiff's husband was killed in one of defendant's coal mines in Macon County, Missouri. She, conceiving that the negligence of the defendant occasioned his death, brought suit for $10,000 damages. The petition charges (1) that it was the duty of defendant to exercise reasonable care to keep its shafts, entries and drifts in a reasonably safe condition; (2) the petition then proceeds in this manner:

"Plaintiff further states that said Mine No. Sixty-One is a large mine, at which defendant employs a large number of men; that on the said 27th day of March, 1911, the defendant and its officers and agents ordered and directed the said James V. Goode to go through one of the main entries of said Mine No. Sixty-one, known as the third south entry off the sixth west entry, being an entry running north and south in said mine, and at the east side of said entry engage in taking out coal by what is known as pulling pillars; that the said James V. Goode, deceased, did go to said point and did work as so ordered; that the said point, where defendant and its officers and agents so directed James V. Goode to work and where he did work as aforesaid, was a great distance from the shaft or place of entrance to said mine, and for economy of time it was necessary for the deceased, James V. Goode, to take his noon lunch with him into said mine.

"Plaintiff further states that the defendant and its officers and agents carelessly and negligently permitted and suffered the roof of said entry in said mine in which the said James V. Goode was ordered and directed to work and at a point from fifteen to twenty-five feet north of the working place of said James V. Goode, on said March 27, 1911, to be and remain dangerous and unsafe and then and for some time prior thereto carelessly and negligently failed and neglected to

prop, brace or otherwise support or protect the roof of said entry at a point from fifteen to twenty-five feet north of the working place of the said deceased James V. Goode and at a place in said entry where it was the duty of the defendant to use reasonable care to keep the same in a reasonably safe condition. The roof of said main entry was composed of fragile and breakable rock, slate and dirt, and was on March 27, 1911, and for some time prior thereto had been loose, unsafe and dangerous; all of which the defendant and its officers and agents well knew, or by the exercise of ordinary care could have known.

"Plaintiff further states that on the 27th day of March, 1911, at about twelve o'clock, noon, the deceased, James V. Goode while engaged as a coal miner as aforesaid and while in the exercise of due care and caution and without fault or want of care on his part 'stepped from the point' at his working place about the east side of said main entry to a point from fifteen to twenty-five feet north of his working place in said main entry in said Mine No. Sixty-one, where it was the duty of the defendant to use reasonable care and diligence to keep the roof thereof in a reasonable safe condition, for the purpose of eating his lunch, and while so engaged, a large slab of rock fell from the east side of the roof of said main entry westward down to and upon the deceased, James V. Goode, thereby crushing, mangling, injuring and cutting off the top of his head, from which crushing, mangling and injuring the said James V. Goode then and there instantly died.

"Plaintiff further states that the death of the said James V. Goode was caused, occasioned and brought about by reason of the carelessness and negligence of the defendant and its officers and agents in so carelessly and negligently failing and neglecting to use reasonable care and diligence to make the roof of said main entry in said Mine No. Sixty-one reasonably safe at and about the point where the deceased, James V. Goode, was killed as aforesaid, when the defendant through its officers and agents knew, or by the exercise of ordinary

care and diligence, could have known that the roof of said main entry at said point and away from the working place of the said deceased, James V. Goode, was ordered to work was dangerous and unsafe as aforesaid.''

The answer consisted of (1) a general denial; (2) plea of contributory negligence; and (3) a plea of assumption of risk. The petition for *certiorari* charges several conflicts between the opinion of the Court of Appeals and opinions of this court, which, in connection with this general outline, will be noted in the course of the opinion.

I. It is clear that the petition charges that the place of plaintiff's husband's injury was in an entry way fifteen to twenty-five feet north of the place where the plaintiff was working. Plaintiff's husband was engaged in a work somewhat different to ordinary mining. In other words, he was not working in a room ''drifted'' out from an entry, but was in fact depleting a mine. His business was to remove the roof supports, or pillars of coal, that had been left when the rooms of the mine were ''turned.'' His petition so shows and the recited facts in the opinions so show. According to his petition he was directed to remove these ''pillars'' of coal and thus close that portion of the mine from further mining operation. Under the well established mining law of the State, it is the duty of the miner to keep his working place safe, and the duty of the master to keep the entries (the places generally used by many miners) in a condition of reasonable safety. The petition in this case is on the theory that the plaintiff was placed to work at a given place and that at a point (in an entry) fifteen to twenty-five feet north of his working place (a place where he had to look after his own safety) the master had negligently and knowingly permitted a bad roof to remain. The petition does not charge that the roof of this entry was dangerous at any other place, although it is shown that the working place and necessarily this entry was about a mile from the shaft, or place of exit. Presumably from the facts in-

dicated the entry was one of some length, and not only
so but there were others in the immediate community.
Under these facts and this kind of a petition, the trial
court instructed thus:

"The Court instructs the jury that if you believe
and find from the evidence that the defendant was on
the 27th day of March, 1911, a coal mining corporation,
operating a coal mine known as Mine Number 61, near
Ardmore, Macon County, Missouri; that James V.
Goode was in the employ of the defendant, engaged as a
common laborer in digging coal for defendant; that
prior to and on the 27th day of March, 1911, James V.
Goode was the husband of plaintiff, Catherine Goode,
and that on said 27th day of March, 1911, said James
V. Goode was working for the defendant in its said
Mine Number 61, and was in the exercise of reasonable
care and caution for his own safety on his part; and
that a large slab of rock fell from the side and roof of
*one of the main entries of defendant's said mine* and at
a point away from his working place, on to the said
James V. Goode and instantly killed him; that said slab
of rock was and had been loose and dangerous, and
that the defendant, its officers and agents knew, or by
the exercise of ordinary care would have known that
said slab of rock was loose and dangerous, and that said
James V. Goode did not know, and by the exercise of
ordinary care would not have known that said slab of
rock was loose and dangerous, then your verdict must
be for plaintiff, in such sum as you may believe from
the evidence she is entitled to recover, if any, not to ex-
ceed the sum of ten thousand dollars."

The italics, supra, are ours. It should be noted
that the instruction in so far as it undertakes to locate
the place in the mine whereat the defendant had been
negligent, says: "from the side and roof of one of the
main entries of defendant's said mine," without limit-
ing it to the place in the entry where the petition of the
plaintiff charged the negligence to be. Nor does it limit
it to the entry wherein the deceased was at work. It
simply describes the place "as one of the main en-

tries.'' Defendant contends that this instruction broad-
ened the issues made by the pleadings, and that the
Court of Appeals in upholding a judgment growing out
of such an instruction had gone contra to our rulings.
The Court of Appeals in the opinions filed do not seri-
ously question that the instruction broadened the issues,
but rather sustain the verdict upon the theory that the
error was harmless. Error is presumed to be harmful
unless the contrary be made to appear. Under this pe-
tition the defendant had the right to conclude that there
was no necessity of disproving negligence in the main-
tenance of the entry roof at any point except that
named in the petition. The failure to charge negligent
maintenance at any other point amounted to a conces-
sion that at other points the entry roof was safe. At
least it was not incumbent upon defendant to prepare
proof as to safe maintenance except at the place named.
To require the defendant to defend against alleged neg-
ligence at other points in the entry or in the mine would
be manifestly unfair. Under the petition the defend-
ant might be fully prepared to meet this issue of al-
leged negligence, but would not be prepared if the plain-
tiff's proof was permitted to take a broader range and
show negligence elsewhere than alleged in the petition.
But even if the proof does take a broader range, yet an
instruction given must be both within the terms of the
pleadings and the proof. We have had occasion to ex-
amine this rule several times, and tried to shortly ex-
press the Missouri case law when in Degonia v. Rail-
road, 224 Mo. l. c. 589, we said:

"But, further, an instruction cannot be broader
than the pleadings, although the evidence may take a
wider range, nor on the other hand can the instruction
be broader than the facts proven, although the plead-
ings may take a broader range. In other words, the in-
struction must be within the purview both of the plead-
ings and the evidence. [Mansur v. Botts, 80 Mo. l. c.
658; Bank v. Murdock, 62 Mo. 70.]''

The Missouri case law upon the subject of broaden-
ing the issues made by the pleadings by way of instruc-

tions (even though based upon evidence beyond the scope of the pleadings) are fully reviewed in the later case of State ex rel. National Newspapers' Assn. v. Ellison et al., 176 S. W. l. c. 13, whereat we said:

"Having so pitched his battle lines, the legal battle must proceed upon such lines. He cannot broaden the issues either by evidence or instruction."

We were there discussing the negligence pleaded in the petition, and so discussing it in a case where the evidence offered took a broad latitude. We announce again, as we have before, that instructions cannot be broader than the pleadings, however much latitude the course of the evidence may take. The issues to be covered are the issues (in the first instance) made by the pleadings. No instructions should be broader, as to issues, than the pleadings. If the evidence is not as broad and comprehensive as the issues made by the pleadings, then the instructions must be within the evidence and the pleadings, but cannot be broader than the evidence.

In the instant case the evidence assumed a broader field than the pleadings. In such event the instructions must be limited to the issues raised by the pleadings. The instruction cannot follow the broad latitude of the evidence, and especially so when such evidence was objected to at the trial. But we need not rely upon an objection to irrelevant evidence. At most, the issues made by the pleadings are the only ones to be instructed upon, and even these issues may be lessened in number if the evidence offered does not cover all the issues made by the pleadings. In the instant case the instruction did go beyond and broaden the issues made by plaintiff's petition, and in this violated the rule announced by this court, and the opinion of the Court of Appeals likewise contravened our rule when it sustains the instruction. The opinion practically admits this position, but takes the view that the error was harmless. We cannot take that view of the instruction. When a trial court admits evidence (erroneously) beyond the issues made by the pleadings, and then in-

State ex rel. v. Ellison.

structs (erroneously) upon such evidence, it is requiring the defendant to meet an issue of which it had no notice by the service of process and the petition. The defendant is entitled to know from the petition just what he is called upon to defend, and we can't say that it is harmless when he is called upon to defend (without notice) a different negligent act. Nor can the Court of Appeals by merely saying ·that the erroneous instruction is harmless preclude our review of it here in a case of this character. For the reasons aforesaid the record of the Court of Appeals should be quashed. Other questions we take next.

II. As stated before, we have three opinions to which to go for the facts. It is next urged here that the broad instruction discussed in the previous paragraph of this opinion is in direct conflict with Instruction 7 given for defendant. · Instruction 7 reads:

"You are further instructed by the court that the negligence charged in plaintiff's petition is that plaintiff's husband sat down to eat his dinner at a point fifteen or twenty feet north of his working place, at which place there was an overhanging, unsafe and dangerous rock, which was known to the defendant, or could have been known by the exercise of ordinary. care; now, you are instructed that it devolves upon the plaintiff to prove the said facts alleged, by a preponderance of the evidence, that is to say, by the greater weight of evidence; otherwise she cannot recover, and your verdict must be for the defendant."

That there is a conflict is apparent. The one confines plaintiff's proof of negligence to the place alleged in the petition, whilst the other is at least a roving commission to find negligence in the maintenance of the roof of entry at any point in such entry. As said previously, such a roving commission is unfair to one called upon to disprove negligence. Where the petition charges the particular place whereat the negligence exists, it is wrong and unfair to require the defendant to defend against alleged negligence in another place.

Such defendant might announce ready for trial upon the negligence charged in the petition, and yet be wholly unprepared to meet evidence of negligence at another place. The law contemplates a fair fight in an open field, but that field is the one circumscribed by the pleadings. The opinion last delivered by the Court of Appeals in effect overrules the contention of the defendant that there is a conflict in these two instructions. That there is a conflict is apparent; and if the instruction for defendant was correct, as we have indicated by our discussion under point one, supra, then the Court of Appeals has contravened innumerable decisions of this Court in permitting a verdict thus procured to stand. We have always ruled that if two instructions conflict, and the one given for appellant is right under the law, then the giving of the one for the respondent was error for which the case should be reversed. Such is the status of this case.

In Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. l. c. 613, we said:

"Irreconcilable and contradictory instructions are necessarily confusing to the jury, and invariably breed error. It cannot be said this is harmless error. We are not able to say which instruction the jury followed and which it disregarded."

III.   Upon the measure of damages the plaintiff's instruction reads:

"The court instructs the jury that if you find for the plaintiff you shall allow her a sum not to exceed ten thousand dollars, in the discretion of the jury, and in determining the amount you will allow her you may take into consideration the pecuniary loss, if any, occasioned to the plaintiff by the death of her husband, *and you may also take into consideration the facts constituting negligence on the part of the defendant causing the death;* and in considering the subject of her pecuniary loss you may consider what would have been the value of her support from her husband from the time of his death during the time he would probably have lived and

supported her, and you may also consider the additional burden, if any, falls upon her, for the support of her minor children by reason of his death."

This instruction is referred to and quoted from in the opinion. We have italicized the clause criticized by the appellant. It is urged that this clause permitted the jury to add to the damages by way of punishment to the defendant. Appellant says that such instruction sounded in punitive damages.

The statute, Revised Statutes 1909, section 5427, reads:

"Damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 5425; and in every such action the jury may give such damages, not exceeding ten thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue, *and also having regard to the mitigating and aggravating circumstances attending such wrongful act, neglect or default.* [R. S. 1899, sec. 2866, amended Laws 1907, p. 252.]" The italics are ours.

It must be remembered that this statute is fixing the liability not only in simple cases of negligence but in cases of wilful wrongful acts. These sections 5426 and 5427, Revised Statutes 1909, furnish the basis for wilful wrongs such as unjustifiable assaults. [Gray v. McDonald, 104 Mo. 303.] The clause in this instruction directing the jury to specifically consider the facts constituting the negligence sounds much like authorizing the jury to aggravate the damages if the evidence of negligence would justify. The instruction with this phrase in it was error for two reasons: (1) there were no aggravating circumstances shown, and, therefore, the instruction was broader than the evidence; and (2) the petition did not plead such a case. So that this, like the first instruction discussed in paragraph one hereof, broadened the issues, and the court violated our rule as expressed in the cases cited, supra, in holding

that such was a proper instruction. Other points made need not be discussed. From what is said the record of the Court of Appeals should be quashed, and it is so ordered.

All concur, except *Bond, J.,* who dissents, and *Williams, J.,* who did not sit.