Lois MEYER, (Plaintiff) Respondent,

v.

Walter A. BECK, (Defendant) Appellant.

No. 31229.

St. Louis Court of Appeals.

Missouri.

June 14, 1963.

Wm. J. Becker, Clayton, for appellant.

Thomas C. Hullverson, Corinne Richardson, Hullverson, Richardson & Hullverson, St. Louis, for respondent.

RUDDY, Presiding Judge.

This is an action to recover damages for personal injuries sustained by plaintiff as a result of a collision between the automobile she was operating and an automobile owned and operated by the defendant. Plaintiff obtained a verdict of $5000 and defendant has appealed.

In this appeal defendant complains about the giving of Instruction No. 4 and seemingly complains about the giving of Instructions No. 2 and No. 3 with the giving of Instruction No. 4. One other point relied on by defendant is that the court erred in overruling defendant's motion for a directed verdict at the close of all of the evidence for the reason that plaintiff's evidence did not develop the essential elements necessary to submit a case on the "last clear chance doctrine." Plaintiff contends the last point presents nothing for review because plaintiff also submitted a primary negligence case and defendant has not challenged the sufficiency of the evidence to support the charges of primary negligence. However, plaintiff contends a sufficient case was made under the humanitarian doctrine.

This last point relied on by defendant requires a summation of the evidence. We must state the facts most favorable to

plaintiff and give to her such favorable inferences as may reasonably be drawn therefrom.

The collision between the two automobiles took place at an intersection of two public alleys in Clayton, Missouri. Plaintiff was west bound in the north half of the alley for east-west traffic. Defendant was north bound in an alley for north and south bound traffic. About ten feet east of the southeast intersecting corner of the alley is a building which obstructs the view of west bound and north bound motorists. Plaintiff's evidence shows that she operated her car on the right hand or north side of the alley and as she approached the intersection of the two alleys she slowed down the speed of her car and thought she was traveling about five miles per hour. A stairway from a rear entrance to the building mentioned above and running to the ground level protruded west of the building. When plaintiff was a few feet past or west of the stairway she saw defendant's car about 30 or 35 feet away. At the time she saw defendant's car it was south of the alley in which she was driving and, of course, to her left. Defendant's automobile was traveling north at the time and after seeing defendant's automobile 30 or 35 feet away plaintiff then stepped on the accelerator and increased the speed of her car. She could not say how fast defendant's car was traveling at the time she first saw it but "he seemed to be moving at a slow rate of speed." As she reached a point over half way across the north-south alley she said she saw defendant's car "out of the corner of her eye" approaching at a much faster rate of speed. She could not estimate the speed of defendant's car but could only say that it was faster than the first time she had seen it. When she saw defendant's automobile "out of the corner of her eye" she said it was 12 or 15 feet away. At that time she had increased her speed to 10 or 15 miles an hour. Immediately thereafter a collision took place and according to plaintiff the left rear fender of her car was struck by the left front

bumper of defendant's car. She could not estimate the speed of defendant's car at the time of the collision but she described the collision as a "sudden jolt" and also said, "It happened so fast that after I had seen it the second time it was just a matter of seconds. It was a sudden jolt to the car." The collision took place on the north side of the east-west alley and on the west side of the north-south alley. After the collision plaintiff's vehicle moved 5 or 10 feet. She heard no horn sounded and heard no "squealing of brakes."

The pertinent parts of defendant's testimony show that he was in the Anderson Radio Company which occupied a building south of the east-west alley and on the east side of the north-south alley. Before the collision took place he backed his automobile out of a yard behind the Anderson Radio premises and then proceeded to go north in the alley. He said he first saw plaintiff's car when she was going west through the intersection of the two alleys. Defendant said plaintiff "was looking in her purse" when he first saw her and that thereafter he stopped. He said that plaintiff did not look up "until she was reasonably close to the pole." The pole he had in mind was a telephone pole at the northwest corner of the intersection of the alleys. Defendant admitted that he did not sound a horn and estimated that he saw plaintiff for a period of four or five seconds before the collison. When he first saw plaintiff's car she was probably traveling 15 miles per hour and he was then about 28 feet away from the point where the impact took place. He was asked, "And you say at all times she was not conscious of anything during that time, she must have been looking down?" and he answered, "She was looking down, yes, sir."

In another place in his testimony he stated that he was traveling possibly 7 or 8 miles an hour and when asked if he could stop his automobile at 30 miles an hour within 15 feet he answered that he thought he could stop it in less than that distance. He then testified that he could stop his

automobile within 3 or 4 feet when traveling at a speed of 7 or 8 miles an hour. He thought that the highest rate of speed he attained from the time he started up until the time he came to a complete stop was probably 10 or 15 miles per hour.

Among the points relied on by defendant are the following:

· "I–B. The lower court erred in giving an instruction on the humanitarian doctrine and specific acts of negligence in submitting the same case. If a case is submitted on the humanitarian doctrine it cannot be submitted on any other theory of negligence.

"II. The trial court erred in giving an instruction on humanitarian doctrine coupled with an instruction on contributory negligence, as both cannot be given in submitting the same case."

■ The strange and puzzling thing about Point No. II relied on by defendant is that the contributory negligence instruction he contends should not have been given in a case where there is an instruction on the humanitarian doctrine, was an instruction offered by the defendant and given by the court at defendant's request. However, it is sufficient to point out that the contributory negligence instruction was given and submitted as a defense to the primary negligence submitted for the jury's consideration under plaintiff's Instruction No. 2. There is no need to discuss this point further because an obvious reason exists which compels us to ignore both of these points raised by defendant on appeal. Simply stated, the points were not properly preserved for appellate review. The errors complained of in these points attempted to be raised by defendant in this appeal, were not brought to the attention of the trial Court and no such specific objections were made in the trial Court as required under Civil Rules 70.02 and 79.03, V.A.M.R. Briefly stated, these rules require specific objections to instructions be made before submission to the jury or in the motion for

a new trial or partly before submission and partly in the motion for new trial, and unless specific objections are made timely at one place or another, the alleged errors therein are not preserved for appellate review. O'Brien v. City of St. Louis, Mo., 355 S.W. 2d 904; Overton v. Tesson, Mo., 355 S.W.2d 909; Nelson v. St. Louis Public Service Company, Mo.App., 360 S.W.2d 356. We should add, in passing, that the contention made in Point I–B, relied on by defendant herein, wherein he asserts that a case cannot be submitted on both the humanitarian doctrine and on specific acts of negligence, is so fundamentally wrong that it requires no application of Civil Rule 79.04, V.A.M.R., which permits this court to consider plain errors affecting substantial rights even though not properly raised in the trial court or preserved for review.

In point I–A defendant complains that the lower court erred in giving an instruction on the humanitarian doctrine because (1) it was not covered by the pleadings, and (2) it was not proven by the evidence offered by the plaintiff. The only objection made to the lower court concerning this instruction is contained in the motion for new trial wherein the defendant said:

"The Court erred in giving and reading to the jury Instruction No. 4 in which the last chance or humanitarian doctrine was submitted for the reason that said Instruction is contrary to the law under the facts in this case as submitted in evidence."

There is serious doubt in this Court's mind that this objection to Instruction No. 4 is specific enough to preserve the point for appellate review. However, inasmuch as defendant seems to contend that a humanitarian case was not pleaded or proved we will review this point to the extent permitted under the rules.

■ Defendant's contention that plaintiff's Instruction No. 4, which was a submission under the humanitarian doctrine,

was not covered by the pleadings, must fail. Plaintiff's Instruction No. 4 was in the usual form of a submission under the humanitarian doctrine and required a finding that defendant could have swerved or turned his automobile to the right or slackened the speed thereof and thus and thereby have avoided the collision. Plaintiff's petition contained the following allegations:

"(3). That said collision occurred as a result of the negligence of the defendant in driving at an excessive rate of speed; failing to keep a careful and vigilant lookout and although plaintiff was on defendant's right defendant negligently failed to yield the right of way to her; failing to stop, slacken the speed of his automobile or swerve his automobile; failing to sound a warning; and failing to take measures to avoid accident if he saw or could have seen plaintiff in a position of imminent peril of injury."

We hasten to say that the part of the above allegations which attempts to plead negligence under the humanitarian doctrine is no model to be followed by lawyers in the future in the preparation of their petitions in negligence actions. However, we do think that it sufficiently pleads negligence under the humanitarian doctrine, terse as it may be, and is sufficient after judgment, especially where defendant failed to file a motion in the trial court for a more definite statement. Rodgers v. St. Louis-San Francisco R. Co., Mo.App., 31 S.W.2d 546, 550.

This is not a pleading wherein the plaintiff fails to plead the essentials of the humanitarian doctrine but is one wherein the pleader merely fails to specify the measures that should have been taken to avoid the accident. Defendant cites two cases in support of his contention, State ex rel. Central Coal & Coke Co. v. Ellison, 270 Mo. 645, 195 S.W. 722, and Bach v. Diekroeger, Mo.App., 184 S.W.2d 755.

In the case of State ex rel. Central Coal & Coke Co. v. Ellison, supra, the court held that the instruction was broader than the pleadings because the pleadings did not charge negligent maintenance of the premises at the point stated in the instruction and stated that the instruction failed to limit the consideration of the jury to the place where the petition of plaintiff charged the negligence to be.

In the case of Bach v. Diekroeger, supra, an instruction was submitted permitting the jury to find that defendant's driver was negligent in failing to observe or heed a signal given by the electrical signal device on plaintiff's truck. This Court held that it was error to give this instruction because it was not within the scope of the pleadings, that such a charge of negligence had not been pleaded in the petition of plaintiff.

The facts in these two cases relied on by defendant show that the negligent acts submitted to the jury had never been pleaded in any form, whereas, in the instant case negligence under the humanitarian doctrine was pleaded and was sufficient in the absence of a motion to make the petition more definite.

The contention made by defendant under Point I-A that the court erred in giving the instruction under the humanitarian doctrine because, as he described it, "it was not proven by the evidence offered by the plaintiff" is wholly unsupported by any citation of authorities and more importantly defendant has failed to argue this contention and develop it in the argument portion of his brief. Because of his failure to develop this contention in the argument it must be deemed abandoned by him and for this reason will receive no consideration from us. Automobile Club of Missouri v. Hoffmeister, Mo.App., 338 S.W.2d 348, l. c. 357; In re Adoption of P. J. K., Mo.App., 359 S.W.2d 360, l. c. 362.

■ Defendant in his last point contends that the court erred in overruling his motion for a directed verdict at the close of all of the evidence "for the reason that plaintiff's evidence did not develop the essential elements necessary to submit a case on the last clear chance doctrine." As heretofore

pointed out, plaintiff submitted primary negligence in Instruction No. 2 and negligence under the humanitarian doctrine in Instruction No. 4. Answering defendant's last point, plaintiff asserts that it presents nothing for review because she submitted a primary negligence case and defendant has not challenged the sufficiency of the evidence to support the charges of primary negligence. It will be noted that the point relied on by defendant is directed to the trial court's error in overruling his motion for a directed verdict at the close of all of the evidence. In the case of Nelson v. Wabash Railroad Company, Mo., 300 S.W.2d 407, 1. c. 409, the Supreme Court held that "if plaintiff made a case under any theory submitted, then defendant's motion for a directed verdict and its motion after verdict for judgment were both properly denied." (Citing cases.)

In the case of Weil Clothing Company v. National Garment Company, Mo.App., 148 S.W.2d 586, 1. c. 595, defendant at the close of all of the evidence filed a request for a directed verdict alleging that under the pleadings and the evidence in the case plaintiff was not entitled to recover and the verdict must be for the defendant. Answering this, we said: "It will be observed that the requested motion was general and not leveled at each count of the petition separately, so that we must hold that since it could not have been sustained as to Count One, the Trial Court properly denied the motion." (Citing cases.)

Assuming, without so holding, that plaintiff did not make a submissible humanitarian doctrine case, nevertheless, we do not feel it our duty to discuss the question of the sufficiency of the evidence to support the submission of the two specifications of primary negligence contained in plaintiff's Instruction No. 2. Defendant in his point relied on limits his attack upon the sufficiency of the evidence to submit a case under the humanitarian doctrine and at no time does he contend that plaintiff failed to make a case of primary negligence. Defendant evidently was satisfied that plaintiff's evidence

did support a submission of the primary negligence contained in Instruction No. 2. Our examination of the record would indicate that defendant was correct in assuming that a case of primary negligence had been made. Therefore, the trial court did not err in overruling defendant's motion for a directed verdict at the close of all of the evidence.

The judgment of the Circuit Court is affirmed.

WOLFE and ANDERSON, JJ., concur.