JACOB SPINNELL, Respondent, v. JOSEPH GOLD-BERG & JACOB GOLDBERG, JR., Partners, Doing Business Under Firm Name of J. GOLDBERG & SON, Appellants.*

Kansas City Court of Appeals. June 29, 1925.

1. **MASTER AND SERVANT:** Where Action Based on Failure to Furnish Safe Appliances, Failure to Allege and Prove That Dimensions of Stool Which Collapsed Injuring Employee Were Not Sufficient, Held to Justify Overruling Demurrer Thereto. In an action for damages for personal injuries sustained by employee resulting from collapse of stool upon which he was standing, where petition did not allege or evidence show dimensions of stool were not proper and sufficient for purposes stool was used, and negligence charged was failure to furnish reasonably safe appliances with which to work, *held* demurrer thereto properly overruled.

2. **DEMURRER:** In Considering a Demurrer, Evidence of Plaintiff Must be Accepted as True. In considering a demurrer, the evidence of plaintiff must be accepted as true, and he is entitled to all reasonable deductions therefrom.

3. **MASTER AND SERVANT:** Negligence: Evidence as to Injuries to Employee Received When Stool, Furnished for His Use, Collapsed, Held for Jury. In action for personal injuries to employee sustained as result of collapse of a shaky and wabbly stool furnished by defendant for his use, while he was at work, evidence *held* sufficient for submission of case to jury.

4. ———: Whether Employee Guilty of Contributory Negligence in Use of Defective Stool, Held for Jury. Where employee, in using defective and wabbly stool, furnished him to stand upon, called employer's attention to its condition and objected to using it and employer assured him of its safety and directed him to use it, *held* he was not guilty of contributory negligence as a matter of law in using stool.

5. ——: **In Action Where Employee Injured by Defective Stool Was Assured of Its Safety and Directed to Use It, Held "Simple Tool Doctrine" Was Inapplicable.** In action by employee for injuries sustained when defective stool upon which he was standing, while working, collapsed, where employee after objecting to using it was assured by employer of its safety and directed to use it, *held* under the facts "simple tool doctrine" did not apply.

6. **INSTRUCTIONS: Instruction Not Erroneous Because It Did Not Require Finding That Stool Was Not Reasonably Safe and That Defendant Negligently Directed Plaintiff to Use Same.** An instruction requiring jury to find for plaintiff if "defendants ordered and directed plaintiff to use a certain stool, . . . and that the legs of said stool were loose, out of line, uneven and insecurely attached . . . that said stool was old and worn . . . defective, unsafe and insecure, *held* not erroneous as failing to require jury to find that stool was not reasonably safe, and that defendants negligently ordered and directed plaintiff to use stool.

7. ——: **Instruction Held Not Erroneous in Failing to Require Finding That Defendant Knew of Defective Condition in Time to Have Remedied the Same.** An instruction requiring jury to find that defendants knew, or by the exercise of ordinary care, could have known of condition of stool, *held* not erroneous in failing to require finding that defendants knew or could have known condition of stool "in reasonable time to have remedied the same prior to the accident," since evidence showed plaintiff used defective stool at defendant's direction for two weeks before accident occurred.

8. **DAMAGES: A Verdict for $5000 for Permanent Injuries to Back and Abdomen Held Not Excessive.** Where an ornamental iron worker received permanent injuries to back and abdomen, necessitating operation for double hernia, resulting in loss of wages in the sum of $1080. and medical expenses amounting to $650, a verdict for $5000 is *held* not to be excessive.

---

*Corpus Juris-Cyc. References; Damages, 17 C. J., p. 1097, n. 6. Master and Servant, 39 C. J., p. 830, n. 84; p. 959, n. 67; p. 1144, n. 27; p. 1204, n. 77; p. 1233, n. 74; p. 1235, n. 81. Trial, 38 Cyc., p. 1543, n. 69.

Appeal from the Circuit Court of Jackson County.—
*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Jules C. Rosenberger, Rollin E. Talbert* and *Dupuy G. Warrick* for respondent.

*Morrison, Nugent, Wylder & Berger* for appellant.

ARNOLD, J.—This is an action in damages for personal injuries alleged to have been sustained by plaintiff through negligence of defendants.

Defendants are partners doing business under the name of J. Goldberg & Son, engaged in the operation of a large plant in Kansas City, Mo., for the manufacture of structural steel, ornamental iron and wire and allied products. Plaintiff had followed the trade of an ornamental iron worker for about twenty-seven years and for about six years had been employed by defendants in that capacity. For several weeks prior to the accident in suit, he had been engaged in the construction of an ornamental iron canopy to be placed over the entrance to the building of the Kansas City Club.

On March 4, 1922, the date of the accident, the framework of the canopy had been completed and plaintiff was engaged in fitting to the framework leaves and other ornaments of iron. For convenience of the workmen the canopy had been placed upon wooden carpenter horses, about three feet in height. The canopy frame was about two feet six inches high, thus making the top of the frame as it rested on the wooden horses about five feet six inches above the floor. In fitting these ornamental parts to the canopy it was necessary to grind smoothly the surfaces which were to be fitted together. The grinding was done by means of an automatic grinding machine operated by compressed air, and weighing twenty-five to thirty pounds. It was about two feet long and a foot thick, and on one end was a handle containing a trigger by manipulation of which the power was turned on and off. At the other end was attached an emery wheel which was caused to revolve by application of the power, the machine being held in the hands of the operator while in use.

In order to do the grinding it was necessary for the workman to be elevated above the floor sufficiently to enable him to reach the top surface of the canopy frame with the grinding machine. Plaintiff went to Joseph Goldberg, senior member of defendant partnership, and told him that he needed something to stand on in doing this work. Goldberg then produced a stool from the blacksmith shop and told plaintiff to use it. Plaintiff testified he noticed the stool was "shaky," that he called Goldberg's attention to such condition and asked for a stronger stool; whereupon Goldberg directed him to use the stool in question and assured him that he could safely use it, but that a new and strong one would be obtained for his use. The testimony shows the canopy was being rushed to completion without unnecessary delay. The stool in question was about sixteen to twenty-four inches high (there being some conflict on this point), with a top twenty to twenty-two inches square. It had four legs which the evidence shows were loose, uneven and crooked, and that the stool did not make a secure and solid foundation. This condition was admitted by defendants. It appears, also, that the stool was old and had been used in and about the plant of defendant for a number of years, and that its legs were not braced.

Plaintiff proceeded to use the stool, as directed by Goldberg, and continued to use it for about two weeks, when the accident occurred. While so using the stool and standing thereon with the grinding machine in his hands, the stool "broke—gave way" precipitating plaintiff backward to the floor, causing him to strike his head against a box and his back on a wire-covered hose which supplied air to the grinding machine, and the machine fell upon his abdomen. He was rendered unconscious and was carried into defendant's office, from whence he was taken in an automobile to defendant's surgeon, Doctor Anderson, who made an examination and directed that X-ray pictures be taken of plaintiff's back. These pictures, if made, were not offered in evidence. From the

office of Doctor Anderson plaintiff was taken to his own home, where he was confined to his bed for about six weeks, and thereafter he was visited by physicians.

The petition alleges negligence of defendants in failing to furnish plaintiff a reasonably safe place to work and in requiring him to use a defective and unsafe appliance in this, to-wit; that in the performance of his work, he was required by defendants to stand on top of a certain wooden stool furnished and provided for his use by said defendants and at the same time hold and operate a grinding machine run by air pressure; that plaintiff while in the performance of his work and while standing on said stool holding and operating said grinding machine in compliance with defendants' orders and directions, was thrown from the said stool to the floor on which said stool sat, with great force and violence, as a result of said stool suddenly giving way and falling over; that the giving way and falling of said stool was due to its defective condition in that said stool was old, worn, and in a shackly condition, the legs were loose, out of line, uneven, and insecurely attached to the top part of said stool so that said stool was shaky and wobbly and made an unsteady, insecure and treacherous footing for plaintiff; that defendants negligently ordered and directed plaintiff to use said stool and stand on said stool in the performance of his work; that defendants negligently assured plaintiff that said stool was safe and that he could safely stand on it in the performance of his work; that the condition of said stool was known to defendants, or could have been known to defendants, by the exercise of ordinary care, in time to have remedied or repaired the same or to have substituted some other appliance for plaintiff's use.

The amended answer is a general denial with pleas of contributory negligence and assumed risk. The reply is a general denial. Trial to a jury resulted in a verdict for plaintiff in the sum of $5,000. Motions for new trial and in arrest, duly filed, were overruled and judg-

ment was entered in accordance with the verdict. Defendants appeal.

In support of the appeal, it is charged, first, that the court erred in overruling defendant's demurrer, offered at the close of plaintiff's evidence. It is argued that so far as the evidence of plaintiff shows the cause of plaintiff's fall is purely conjectural and is not shown to have been due to any negligence of defendants. And in this connection, it is urged there was no evidence produced, nor does the petition allege, that the dimensions of the stool were not proper and sufficient for the purposes for which the stool was used.

Obviously the question of the dimensions of the stool can only be considered under the allegations of the petition to the effect that defendants negligently failed to furnish plaintiff reasonably safe appliances with which to work. The petition does not allege that the dimensions were deficient, nor is there any proof directed to that point, so that we may dismiss this question with the observation that the dimensions of the stool were not an issue in the case. The gravaman of the action is that defendants failed to furnish plaintiff a reasonably safe place in which to work and failed to furnish him with reasonably safe appliances with which to work.

As to the condition of the stool, plaintiff testified that the stool was "shaky, wobbly and unsteady;" that it did not furnish a solid foundation for use in operating the grinding machine; that he had objected to its use, but was directed by Goldberg to use it, and that it would be safe if plaintiff were careful; that under this protest he used the stool with injurious results.

Under the rule that in considering a demurrer, the evidence of the plaintiff must be accepted as true and that he is entitled to all reasonable deductions therefrom, we shall proceed to a further consideration of appellant's first charge of error that the demurrer offered at the close of plaintiff's testimony should have been sustained.

It is charged there is no causal connection shown between the alleged injury of plaintiff and the negligence of defendants. Defendant J. Goldberg testified that he knew of the defective condition of the stool, to-wit, that the legs were loose and wobbly and did not make a solid foundation upon which to stand in using the grinding machine. So that, in fact, there is no dispute as to the defective condition of the stool and its unfitness for the use to which plaintiff was required to put it. Plaintiff testified that while he was using the stool it "gave way— broke down," and precipitated him to the floor. We think this evidence was sufficient to take the case to the jury under the allegations of the petition. Plaintiff claims, and we think properly, that the case of Dyrcz v. Packing Co., 194 S. W. 761, decided by this court, is directly in point. [See, also, Sullivan v. Railroad, 107 Mo. 66, 17 S. W. 748; Duerst v. Stamping Co., 163 Mo. 607, 63 S. W. 827.] There was no error in submitting the case to the jury.

It is also charged that plaintiff was guilty of such contributory negligence as to preclude a recovery. In this connection it is urged that a stool is an appliance of a simple nature; that this stool had been around the shop for six years; that plaintiff was more familiar with it than was the master, and that under the "simple tool doctrine" plaintiff was guilty of contributory negligence in using the stool knowing it was not substantial.

We cannot accept this argument as conclusive in the face of the testimony of plaintiff that he called defendant Goldberg's attention to the condition of the stool and offered an objection to using it, but that Goldberg assured him of its safety and directed him to use it. This evidence supports the charge in the petition that he was directed to use it. Under this showing, we are unable to say that plaintiff was guilty of contributory negligence as a matter of law. The simplicity of the appliance might be considered in relation to the question of contributory negligence had plaintiff selected it and used it of his own

volition; but it can hardly be said to apply to the facts in evidence here which show that he was directed by the master to use the appliance after the latter's attention had been directed to its faults and the possible danger attendant on its use. The question as to whether or not defendants failed to use ordinary care to furnish a reasonably safe appliance was for the jury. [Conroy v. Iron Works, 62 Mo. 35; McGowen v. Railroad, 61 Mo. 528; Warner v. Railroad, 62 Mo. App. 184; Dyrcz v. Packing Co., 194 S. W. 761; Halliburton v. Railway Co., 58 Mo. App. 27.] The argument is that this is a case for the application of the rule as to simple tools, and that defendant is exonerated from liability if the servant used the appliance knowing it to be unsafe; in other words, that plaintiff used the tool, knowing its defects and that he cannot recover for injuries resulting from causes seen and known to him at the time he accepted and used the tool.

But, as was held in the Dyrcz case, supra, the simplicity of a tool is not, in itself, conclusive; that "The general rule as to the master's liability under the circumstances here disclosed, applies as well to a simple appliance as to a complicated mechanism. [Warner v. Railroad, 62 Mo. App. 184, 193.]'' In the Dyrcz case the simple appliance was a box which plaintiff was required to use in the process of stacking meat. The facts of the two cases are very similar and are to be controlled by the same principles. We hold the question of plaintiff's contributory negligence was for the jury and this ruling is made after due consideration of defendants' very able brief and the citations therein contained.

It is urged that plaintiff's instruction No. 1 is erroneous because it does not require the jury to find that the stool in question was not reasonably safe and that defendants negligently ordered and directed him to use said stool, but authorizes a verdict for plaintiff even though they might find that it was reasonably safe for use.

The instruction required the jury to find ''that said stool was old and worn . . . and that by reason of the condition of said stool, the same was defective, unsafe and insecure,'' before they could return a verdict for plaintiff. The instruction, in so many words, does not require a finding that the stool was ''not reasonably safe'' but it is clear the jury must find that it was ''unsafe'' a term which necessarily embraces the term ''not reasonably safe.'' Defendants' objection in this respect is not tenable. We think the point urged that the instruction fails to require the jury to find that ''defendants negligently ordered and directed plaintiff to use said stool'' is equally untenable. The language is ''that defendants directed plaintiff to use for that purpose a certain stool, if you so find from the evidence, and that the legs of said stool were loose, out of line, uneven and insecurely attached to the top part of said stool . . . that said stool was old and worn . . . and that . . . the same was defective, unsafe and insecure, if so, and that defendants knew, or by the exercise of ordinary care could have known of the condition of said stool; and if you further find that plaintiff used said stool in the doing of said work, and that as a direct result, if so, of the condition of said stool, he was caused to fall therefrom and sustained bodily injuries,'' etc., ''then your verdict should be in favor of the plaintiff.''

The Supreme Court has held repeatedly that an instruction which requires the jury to find facts detailed therein, which, if found, would constitute negligence, and directs a verdict, is proper. [Owens v. Railroad, 95 Mo. 169; Gorham v. Railway Co., 113 Mo. 408; Evans v. General Explosives Co., 239 S. W. (Mo.) 487; State ex rel. v. Ellison, 223 S. W. (Mo.) 671.] We think the instruction is not open to criticism in the respect charged.

It is further urged as error that the instruction requires the jury to find that defendants knew, or by the exercise of ordinary care, could have known of the condition of said stool, but does not require a finding that

defendants knew or could have known of the condition of said stool ''in reasonable time to have remedied the same prior to the accident.'' We think this complaint is without merit. The instruction requires the jury to find that defendants knew, or by the exercise of ordinary care, could have known of the condition of said stool, and that they directed plaintiff to use it. It naturally follows that the jury must have found that defendants knew of the condition of the stool at the time plaintiff was directed to use it. Plaintiff's testimony shows this was two weeks before the accident occurred.

The Supreme Court in State ex rel. v. Ellison, 223 S. W. 671, 674, has determined this point against defendants' contention, saying:

''It is insisted that the instruction required Bradford to exercise ordinary care for his own safety only at the time the order to climb the pole was given, and exculpated him for his contributory negligence, if any, at the time he actually climbed the pole. No decision of this court is cited. The second instruction for plaintiff in the Corby case is identical in this respect, with Instruction 4. The Court of Appeals cited the Corby case on this question. The controlling consideration, however, is that it is inconceivable that a jury could have been misled by this instruction into thinking that the requirement as to the care exacted of Bradford had reference to the time and the fact of his receiving the order from his foreman. There was nothing at that time to which the plaintiff's duty to exercise care could have related. This is a view expressed by the Court of Appeals. The instruction could be made more clear, but we find no authority, on this criticism, for quashing the record of the Court of Appeals.''

[See, also, Midwest National Bank, etc., Co. v. Davis, 233 S. W. 406; Morgan v. Zinc Co., 199 Mo. App. 26, 199 S. W. 590.] The controlling rule in the Morgan case is that the right of defendants to insist on a reasonable time within which to discover a defect and repair it can-

not arise in a case wherein it is shown that the defect is known to the master before the order is given to use the appliance in its defective condition. The application of this rule to the present situation is obvious. [See, also, Popejoy v. Hydraulic Press Brick Co., 193 Mo. App. 612, 186 S. W. 1133, to the same effect.] We hold the instruction neither erroneous nor ambiguous.

Finally it is claimed the verdict is excessive. In support of this position it is urged that the testimony shows that plaintiff had a hernia in his right side of three years standing, and that he had been to a doctor for an examination in regard to it within six or eight weeks prior to the injury. It was admitted that he had a rupture in his right side at the time of the fall and prior thereto. The proof shows that this rupture was controlled by a truss before the fall and that plaintiff was able to ply his trade, but that by reason of the fall this condition was aggravated and a rupture was produced on the left side, so that it became necessary to perform an operation for double hernia. Plaintiff was confined to his bed at home from March 4 to April 16, 1922, at which time he was taken to a hospital and operated upon and he remained in the hospital three weeks. That he was then taken home and was unable to do even light work until July 1, 1922, and that he has suffered almost constant pain in the abdomen ever since the operation. Further evidence shows that plaintiff sustained a severe injury to his back and a dislocation of the joint terminal which connects the spine and the *ilium,* called the ilosacral joint, from which he has not recovered; and that the only work he could do successfully at the time of the trial—some two years after the accident—was work which could be done while sitting. In wages, the evidence shows that plaintiff lost $1080 and that he is obligated for doctor bills, hospital and medical expenses, $650. It is further shown that he lost ten days from work in February, 1923, due to varicose veins of the legs (not an element in this case), and that he lost three days in December, 1922,

219 Mo. App.—31.

possibly also due to the varicose veins, and that from February, 1923, he worked almost continuously.

Appellate courts are loth to disturb verdicts of juries unless it clearly appears that the size of the verdict is such as to shock the judicial conscience. We find no such situation in this case. The court and jury heard the evidence, saw the witnesses and were better able than we are to pass upon this question. We find no occasion to disturb the verdict.

Finding no reversible error of record, we hold the judgment should be affirmed. It is so ordered.

All concur.